866 P.2d 874

177 Ariz. 206

**STATE of Arizona, Appellee,**

v.

**David Allen VANNOY, Appellant.**

**No. 1 CA–CR 91–0351.**

Court of Appeals of Arizona,
Division 1, Department D.

April 22, 1993.

Review Denied Feb. 1, 1994.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Div. and Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

David Burnell Smith, Scottsdale, for appellant.

## OPINION

CONTRERAS, Judge.

In this case, we decide whether the state must provide a breath sample to a defendant charged with driving under the influence of alcohol when the defendant has given a deficient sample in the breath test, but the state still uses the test results at trial. Defendant David Allen Vannoy was convicted following a jury trial of one count of aggravated driving under the influence of alcohol, a class 5 felony. He appeals from his conviction and from the trial court's order suspending imposition of sentence and placing him on probation for three years. He raises the following issues on appeal:

1. whether the state's interference with his right to counsel required that the charge against him be dismissed;

2. whether the state's failure to inform him of his right to an independent blood alcohol test required that the charge against him be dismissed;

3. whether the state's failure to provide him with a breath sample for independent testing required the suppression of the breath test results that the state introduced at trial; and

4. whether the trial court abused its discretion in denying his motion to allow a previously undisclosed witness to testify.

1. Arizona Revised Statutes section 28–697(A)(1) (Supp.1992) (formerly section 28–692.02(A)(1)) provides that a person is guilty of aggravated driving under the influence of alcohol if he drives under the influence of alcohol while his driver's license is suspended, canceled, revoked, or refused.

2. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Arizona's implied consent law, A.R.S. section 28–691(A) (Supp.1992), provides in pertinent part as follows:

We reverse and remand for a new trial because we conclude that the trial court erred in denying defendant's motion to suppress the breath test results.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of August 31, 1990, Scottsdale police officers observed defendant's automobile going forty miles per hour in a twenty-five mile per hour zone. When the officers stopped defendant, they found that he was driving on a revoked license and that he had alcohol on his breath. They arrested him for aggravated driving under the influence of alcohol.[1] The officers informed defendant of his Miranda rights [2] and of the provisions of Arizona's implied consent law,[3] and transported him to the police station for a breath test.

Defendant was tested twice on an intoxilyzer. The results indicated that the machine had received a deficient breath sample on both tests. Defendant was not advised of his right to have an independent test done, and no breath samples were preserved for him for this purpose.

At trial, the state's intoxilyzer expert, Lucien Haag, testified that a deficient sample can occur when the person being tested fails to blow all of the breath that is in his lungs into the machine. Haag explained that the reading obtained from a deficient sample will be lower than a person's actual BAC. Officers David Bickel and Philip Hazlett testified that defendant's breath samples were deficient because each time defendant took the test, he blew some of his breath out of the side of his mouth instead of into the machine.

> Any person who operates a motor vehicle within this state gives consent ... to a test or tests of his blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration ... if arrested for any offense arising out of acts alleged to have been committed ... while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

Prior to trial, defendant filed a motion to suppress the test results. He also filed a motion to dismiss the charge against him on the ground that the officers had refused to allow him to call an attorney after he was arrested. The trial court denied both motions. Although defendant's breath samples were deficient, the state introduced the intoxilyzer results into evidence at trial. The first test registered a BAC of .194, and the second test registered a BAC of .161. On the basis of these results, Haag testified that defendant's actual BAC exceeded .10 when he took the tests and that it exceeded .21 when he was stopped by the police. Defendant filed a timely notice of appeal from his conviction and from the order suspending imposition of sentence and placing him on probation for three years.

## DISCUSSION

### I. *Alleged Interference with Right to Counsel*

■ Defendant initially argues that the trial court should have dismissed the charge against him because his right to counsel was violated. At the hearing on the motion to dismiss, defendant testified that he asked to speak with his attorney prior to taking the breath test. He maintained that the police told him just to take the test. Two police officers testified that defendant did not ask to call an attorney.

■ If defendant asked to speak with an attorney, he had a right to do so before taking the test. Ariz.R.Crim.P. 6.1(a); *State v. Juarez*, 161 Ariz. 76, 80, 775 P.2d 1140, 1144 (1989). The conflicting testimony, however, created an issue of fact as to whether defendant actually made such a request. The responsibility of resolving factual disputes rests with the trial court. *State v. Tapia*, 159 Ariz. 284, 288, 767 P.2d 5, 9 (1988). The trial court implicitly resolved the factual dispute in question against defendant in ruling that defendant had not been deprived of his right to counsel. Defendant does not claim that there is insufficient evidence to support such a finding. Under these circumstances, there is no basis for reversing the trial court's ruling.

### II. *Failure to Advise of Right to Independent Test*

■ Defendant also argues that the trial court should have dismissed the charge against him because the officers did not advise him of his right to an independent blood alcohol test. We conclude that the officers were not required to inform defendant of his right to an independent test under the circumstances of this case.

Defendant cites *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986), in support of his argument. In *Montano*, the court held that when the state charges a person with driving under the influence of alcohol (DUI), but chooses not to ask the person to submit to a blood alcohol test in accordance with the implied consent law, it must inform the person of his right to obtain an independent test. *Id.* at 389, 719 P.2d at 275. The court stated that since DUI cases are particularly susceptible to resolution by way of chemical analysis evidence, due process requires the state to provide DUI defendants with a fair chance to acquire this type of evidence when the state itself decides to forgo obtaining it. *Id.* at 391, 719 P.2d at 277. In contrast, due process does not require that a defendant be informed of his right to an independent test when the state invokes the implied consent law, because in that instance, the defendant is normally given the opportunity to obtain chemical analysis evidence in conjunction with the test that the state performs. *State v. Miller*, 161 Ariz. 468, 469–70, 778 P.2d 1364, 1365–66 (App. 1989); *State v. Ramos*, 155 Ariz. 153, 155–56, 745 P.2d 601, 603–04 (App.1987). Since the officers in the present case asked defendant to take an intoxilyzer test in accordance with the informed consent law, defendant was not denied due process by the officers' failure to inform him of his right to an independent test.

### III. *Failure to Preserve Breath Samples*

■ Defendant next asserts that the trial court should have suppressed the breath test results because the state did not provide him with a breath sample for an independent test. The state responds that defendant waived

this issue by raising it for the first time in his reply in support of the motion to suppress. Although the state made the same argument in the trial court, the trial court decided the issue on the merits and ruled that defendant had waived the right to his own sample by giving deficient samples both times that he was tested.

■ The fact that an issue may have been raised in an untimely fashion does not preclude this court from reviewing the trial court's ruling on the merits of the issue. *See United States v. Ramos–Zaragosa,* 516 F.2d 141, 144 (9th Cir.1975). Because defendant brought the state's failure to give him a blood sample to the trial court's attention in a manner that was sufficient to inform the trial court that the issue had not been waived and the trial court ruled on the issue, we will review the court's ruling. *See State v. Briggs,* 112 Ariz. 379, 542 P.2d 804 (1975).

■ The state next argues that defendant waived his right to have a breath sample preserved by failing to give an adequate sample. Beginning with *Baca v. Smith,* 124 Ariz. 353, 356, 604 P.2d 617, 620 (1979), Arizona cases have consistently held that a DUI defendant is entitled to a breath sample so that he may have the opportunity to challenge the state's test results by having the sample independently tested and by introducing the independent test results into evidence if they are more favorable to him than the state's results. *See, e.g., Mongan v. Superior Court,* 148 Ariz. 486, 487, 715 P.2d 739, 740 (1986); *State v. Harrison,* 157 Ariz. 184, 186, 755 P.2d 1172, 1174 (App.1988); *State v. White,* 155 Ariz. 452, 455, 747 P.2d 613, 616 (App.1987). While a defendant may waive his right to a sample, such a waiver must be voluntarily and intelligently made. *See Mongan,* 148 Ariz. at 487–88, 715 P.2d at 740–41.

The state notes that A.R.S. section 28–691(B) provides that a DUI defendant's failure to "successfully complete" the blood alcohol test will be deemed a refusal to take the test. It argues that by failing to give a

sufficient sample in the present case, defendant in effect refused to take the test and waived his right to a sample. It cites *Miller* and *Ramos* in support of this contention. We disagree.

■ Section 28–691(B) only addresses the civil suspension penalty for refusing to take the test.[4] It does not govern the state's duty to preserve for independent testing breath samples obtained pursuant to the implied consent law. *See Sherrill v. DOT,* 165 Ariz. 495, 498, 799 P.2d 836, 839 (1990) (civil suspension proceeding is separate from and unrelated to criminal prosecution). Moreover, *Miller* and *Ramos* are readily distinguishable. Both hold that the state has no obligation to inform a defendant of his right to an independent test when he refuses to take the test offered by the state. *Miller,* 161 Ariz. at 469–70, 778 P.2d at 1365–66; *Ramos,* 155 Ariz. at 155, 745 P.2d at 603. However, the state did not obtain any chemical evidence in either case because neither of the defendants took a breath test. *Miller,* 161 Ariz. at 469, 778 P.2d at 1365; *Ramos,* 155 Ariz. at 153, 745 P.2d at 601. In contrast, the state did obtain evidence from the breath tests that defendant took in the instant case, and it used that evidence against him. The purpose of the rule announced in *Baca* is to give a defendant the opportunity to counter the state's scientific evidence of intoxication with scientific evidence of his own. *State ex rel. Dean v. City Court,* 163 Ariz. 366, 368, 788 P.2d 99, 101 (App.1989), *approved,* 163 Ariz. 510, 789 P.2d 180 (1990). By failing to preserve a breath sample in the present case, the state deprived defendant of that opportunity.

In *State v. Velasco,* 165 Ariz. 480, 799 P.2d 821 (1990), the court described in detail the model 5000 intoxilyzer, which is the machine that the state used to test defendant in the instant case. The machine uses a process of infrared spectroscopy, which analyzes a breath sample without destroying it. *Id.* at 485, 799 P.2d at 826. Upon completion of the primary test, the state can preserve the sample by blowing it over silica gel. *Id.* at 483,

4.   Section 28–691(B) provides in pertinent part that any person who fails to take and successfully complete a blood alcohol test will have his license or driving permit suspended or denied for one year.

799 P.2d at 824. The tube containing the silica gel can then be sealed and given to the defendant for independent analysis. *Id.* The state has not explained why it could not have done this in the present case. Because there is no evidence that defendant voluntarily and intelligently waived his right to a breath sample, we conclude that the state's breath test results must be suppressed and that defendant must be granted a new trial.

The state's concern that this decision will cause DUI defendants to intentionally give deficient samples is unfounded. First, a defendant will not be able to offer the results that he has obtained from independent testing of a deficient sample in evidence to prove his actual BAC. A deficient sample lacks sufficient foundation to be admitted for this purpose because it only measures a portion of a person's BAC. Thus, a defendant who has given a deficient sample will only be able to use the sample to show that the state's results are inaccurate. This is precisely the use that *Baca* contemplates.

Second, a DUI defendant who gives a deficient sample remains subject to the civil suspension penalty that section 28–691(B) imposes for failing to successfully complete the test. *See Kuznicki v. Arizona Dep't of Transp.,* 152 Ariz. 381, 382, 732 P.2d 1119, 1120 (App.1986); *Ontiveros v. Arizona Dep't of Transp.,* 151 Ariz. 542, 729 P.2d 346 (App.1986). In addition, the defendant's failure to successfully complete the test is deemed a refusal to take the test. Evidence of such a refusal is admissible to show that the defendant was conscious of his guilt. *See State v. Superior Court,* 154 Ariz. 574, 577–78, 744 P.2d 675, 678–79 (1987). Thus, the state is no worse off when a defendant gives a deficient sample than it is when a defendant totally refuses to take the test.

The state contends, however, that in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the United States Supreme Court overruled the Arizona cases that mandate the preservation of breath samples. In *Trombetta,* the Court held that the due process clause of the Fourteenth Amendment does not require the state or its agencies to preserve breath samples of DUI defendants for independent testing in order to introduce the results of breath tests at trial. *Id.* at 491, 104 S.Ct. at 2535. The Arizona Supreme Court has discussed *Trombetta* several times and has consistently declined the opportunity to overrule existing Arizona case law.

In *Velasco,* the court found that it was unnecessary to decide whether *Trombetta* overruled *Baca* and its progeny. 165 Ariz. 480, 488–89, 799 P.2d 821, 829–30. The court commented, however, that the Arizona cases did not necessarily conflict with *Trombetta.* *Id.* at 488, 799 P.2d at 829. The court went on to reject the suggestion that *Baca* and its progeny were no longer viable in light of *State v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), which the state also relies upon in the present case. *Velasco,* 165 Ariz. at 488, 799 P.2d at 829. In *Youngblood,* the United States Supreme Court said that due process only requires the state to preserve and present to a defendant evidence that has apparent exculpatory value, not evidence that is only potentially exculpatory. 488 U.S. at 56, n. *, 109 S.Ct. at 336 n. *. In *Velasco,* the Arizona Supreme Court distinguished *Youngblood,* noting that the case concerned the destruction of evidence that the state had not attempted to use in its case in chief. 165 Ariz. at 488, 799 P.2d at 829. The court stated that in the case before it and in other DUI cases, the state did use the evidence in question—the defendant's breath and analysis results—in its case in chief. *Id.*

The court also distinguished *Trombetta* in *Oshrin v. Coulter,* 142 Ariz. 109, 112–13, 688 P.2d 1001, 1004–05 (1984). It concluded that *Trombetta* was inapplicable for several reasons, including the fact that under California law, a DUI suspect is given a choice of taking a breath, blood, or urine test. *Id.* at 113, 688 P.2d at 1005. The court noted that the state could have provided the defendant in *Trombetta* with a sample for independent testing if he had taken a blood or urine test, but that he elected to take a type of breath test that did not preserve a sample for later analysis. *Id.* at 112–13, 688 P.2d at 1004–05. The court further noted that the defendant in the case before it did not have such a choice; he was required to take the test that the state of Arizona offered or face the consequences of

his refusal. *Id.* at 113, 688 P.2d at 1005; *see also Dean,* 163 Ariz. at 514, 789 P.2d at 184 (allowing defendant choice between blood test, which would have preserved sample for independent testing, and breath test, which would not have preserved such a sample, satisfied due process). Finally, in *Montano,* the court reiterated the conclusion concerning *Trombetta* that it had reached in *Oshrin* and further noted that "[w]holly apart from its factual limitations, *Trombetta* cannot account for the separate guarantees of the Arizona Constitution." 149 Ariz. at 390 n. 3, 719 P.2d at 276 n. 3. The court recognized that the affirmative duty that *Baca* placed upon the state to collect and preserve breath samples represented an exception to the general rule that the state has no duty to gather evidence for the defense. *Id.* at 390, 719 P.2d at 276. It explained the reason for this exception as follows:

> While the state normally has no obligation to aid a suspect in gathering potentially exculpatory evidence, the unique evidentiary circumstances attendant to DWI arrests justify a narrow exception. The Due Process Clause of the Arizona Constitution guarantees to [a] DWI suspect[ ] a *"fair chance* to obtain independent evidence of sobriety essential to his defense at the only time it [is] available."

*Id.* at 389, 719 P.2d at 275 (emphasis in original) (citations omitted).

In *State v. Youngblood,* 173 Ariz. 502, 844 P.2d 1152 (1993), the court recently rejected the argument that the due process clause of the Arizona Constitution provides greater protection than its federal counterpart with regard to the preservation of evidence by the state. The court held that "absent bad faith on the part of the state, the failure to preserve evidentiary material which could have been subjected to tests, the results of which might have exonerated the defendant, does not constitute a denial of due process of law under the Arizona Constitution." *Id.* 173 Ariz. at 508, 844 P.2d at 1158. The court left intact the exception that *Montano* discussed, but explicitly limited its application to the DUI area:

> Driving under the influence cases are arguably unique for a variety of reasons.

The evidence is in the defendant's own body. Usually the defendant is in custody and the state has the right to take a breath or blood sample. Whatever our DUI jurisprudence means, the differences are too great to transpose its peculiar rules to any other setting. Efforts in the court of appeals to extend this "narrow exception" are expressly rejected.

*Id.* 173 Ariz. at 506, 844 P.2d at 1156.

The Arizona Supreme Court is the final arbiter of Arizona Constitutional issues. *Id.* 173 Ariz. at 504–506, 844 P.2d at 1154–56. We leave it to that court to decide whether to alter its longstanding interpretation of due process requirements in the DUI area.

## CONCLUSION

Our disposition makes it unnecessary for us to address defendant's argument that the trial court abused its discretion in denying his request to call a previously undisclosed witness. This issue will not reoccur if the witness is properly disclosed prior to the new trial.

As we have stated, the trial court should have suppressed the intoxilyzer results because the state failed to preserve a sample of defendant's breath for independent testing. We therefore vacate defendant's conviction and the order placing him on probation and remand this matter for a new trial at which the intoxilyzer results will be suppressed.

GRANT, P.J., and CLABORNE, J., concur.